SUPERSEDING OPINION

PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
　　　　　*Plaintiff-Appellee,*

v.

MARY E. WARNICK,
　　　　　*Defendant-Appellant.*

No. 01-4364

Appeal from the United States District Court
for the Northern District of West Virginia, at Martinsburg.
W. Craig Broadwater, District Judge.
(CR-00-57)

Argued: January 25, 2002

Decided: April 16, 2002

Before WILLIAMS, MOTZ, and TRAXLER, Circuit Judges.

---

Vacated and remanded by published opinion. Judge Williams wrote
the opinion, in which Judge Motz and Judge Traxler joined.

---

## COUNSEL

**ARGUED:** Barry Philip Beck, POWER, BECK & MATZUREFF,
Martinsburg, West Virginia, for Appellant. Thomas Oliver Mucklow,
Assistant United States Attorney, Martinsburg, West Virginia, for
Appellee. **ON BRIEF:** Patrick M. Flatley, United States Attorney,
Martinsburg, West Virginia, for Appellee.

---

**OPINION**

WILLIAMS, Circuit Judge:

Mary Warnick pleaded guilty to aiding and abetting in the distribution of cocaine base within 1000 feet of a school. *See* 21 U.S.C.A. §§ 841(a)(1), 841(b)(1)(C), 860 (West 1999), and 18 U.S.C.A. § 2 (West 2000). On appeal, she contends that the district court erred in failing to decrease her sentencing guidelines offense level pursuant to the safety valve provision in *United States Sentencing Guidelines Manual* § 2D1.1(b)(6) (2000). Because we agree that the district court erred by determining that Warnick was ineligible for the § 2D1.1(b)(6) safety valve, we vacate and remand for the district court to reconsider Warnick's sentence using the appropriate offense level.

I.

On December 5, 2000, Mary Warnick and twenty-five other defendants were named in a 65-count indictment charging various drug-related offenses arising from the trafficking of cocaine base in Jefferson County, West Virginia. Warnick was charged with conspiracy to distribute cocaine base, in violation of 21 U.S.C.A. § 841(a)(1) (Count 1); maintaining a place for the use and distribution of cocaine base, in violation of 21 U.S.C.A. § 856 (Count 7); and aiding and abetting in the distribution of cocaine base within 1000 feet of a school, in violation of 21 U.S.C.A. §§ 841(a)(1), 841(b)(1)(C), 860, and 18 U.S.C.A. § 2 (Count 48).

On January 22, 2001, Warnick entered into a plea agreement, whereby she agreed to plead guilty to Count 48, distribution of cocaine base within 1000 feet of a school, in exchange for the Government's dismissal of Counts 1 and 7. Prior to the sentencing hearing, Warnick filed an objection to the computation of her offense level in the presentence report, alleging that she was entitled to a two-point decrease in her offense level pursuant to the U.S.S.G. § 2D1.1(b)(6) safety valve provision. On May 3, 2001, the district court overruled Warnick's objection and sentenced her to 57 months imprisonment based upon an offense level of 25 and Criminal History

Category I. On May 7, 2001, Warnick filed a notice of appeal to this court.

## II.

On appeal, we must determine whether one who has been convicted of a violation of 21 U.S.C.A. § 860 is eligible for a reduction in his offense level pursuant to the safety valve provision in U.S.S.G. § 2D1.1(b)(6). We review the district court's interpretation of the relevant Sentencing Guidelines de novo. *United States v. Daughtrey*, 874 F.2d 213, 218 (4th Cir. 1989).

Because Warnick was convicted of a violation of 21 U.S.C.A. § 860, her guideline sentence is determined by U.S.S.G. § 2D1.2, which cross-references U.S.S.G. § 2D1.1.[1] At issue is the scope of this cross-reference. Warnick contends that U.S.S.G. § 1B1.5, which generally provides guidance on how to apply cross-references within the Guidelines, requires the sentencing court to apply the § 2D1.1 guideline in its entirety.

U.S.S.G. § 1B1.5 distinguishes between cross-references to an entire guideline and cross-references to a particular section within a guideline. *Compare* U.S.S.G. § 1B1.5(b)(1) ("An instruction to use the offense level from another offense guideline refers to the offense level from the entire offense guideline (*i.e.*, the base offense level, specific offense characteristics, cross references, and special instructions), except as provided in subdivision (2) below.") *with* U.S.S.G. § 1B1.5(b)(2) ("An instruction to use a particular subsection or table from another offense guideline refers only to the particular subsection

---

[1]Section 2D1.2 provides:

   (a)   Base Offense Level (Apply the Greatest):

       (1)   2 plus the offense level from § 2D1.1 applicable to the quantity of controlled substances directly involving a protected location . . . ; or

       (2)   1 plus the offense level from § 2D1.1 applicable to the total quantity of the controlled substances involved in the offense . . . .

U.S.S.G. § 2D1.2.

or table reference, and not to the entire offense guideline."). To determine which type of cross-reference is contained within U.S.S.G. § 2D1.2(a), we begin with the text of that guideline.

Section 2D1.2(a)'s cross-reference directs the sentencing court to use the "offense level from § 2D1.1 applicable to the quantity of controlled substances directly involving a protected location . . . ." U.S.S.G. § 2D1.2(a). The Drug Quantity Table is the only subsection in § 2D1.1 that provides an offense level applicable to a particular drug quantity. *See* U.S.S.G. § 2D1.1(c). Thus, one construction of § 2D1.2(a)'s cross-reference is that it directs the sentencing court to use a particular subsection within § 2D1.1, the Drug Quantity Table, as opposed to the entire § 2D1.1 guideline. There is, however, an alternative construction. Sections 2D1.2(a)(1) and (a)(2) establish two different methods for calculating the offense level. Subsection (a)(1) requires the sentencing court to consider only the quantity of drugs "involving a protected location or an underage or pregnant individual," while subsection (a)(2) requires the sentencing court to consider "the total quantity of controlled substances involved in the offense." Thus, in cases "in which only a part of the relevant conduct directly involved a protected location or an underage or pregnant individual, subsections (a)(1) and (a)(2) may result in different offense levels." U.S.S.G. § 2D1.2, comment. n.1. It may be that the purpose of the "applicable to the quantity" and "applicable to the total quantity" language, therefore, is not to limit the scope of the cross-reference, but simply to focus the sentencing court's attention on discrete aspects of the underlying offense when applying subsections (a)(1) and (a)(2). *Cf. United States v. Sampson*, 140 F.3d 585, 594 (4th Cir. 1998) (concluding that § 2D1.2(a)'s cross-reference to § 2D1.1 requires the sentencing court to distinguish the amount of drugs distributed within 1,000 feet of a school from the amount of drugs not distributed within that distance of the school). Under this analysis, the relevant cross-reference language is "the offense level from § 2D1.1," which is a reference to the entire 2D1.1 guideline, including any adjustments. *See* U.S.S.G. § 1B1.5(b)(1). The sentencing court would therefore apply the entirety of § 2D1.1 to the quantity of controlled substances involving the protected location or underage or pregnant individual, *see* U.S.S.G. § 2D1.2(a)(1), and, in appropriate cases, to the total quantity of controlled substances involved in the underlying offense, *see* U.S.S.G. § 2D1.2(a)(2).

Moreover, as Warnick points out, the cross-reference does not contain the phrase "Drug Quantity Table," a phrase that is used in other cross-references within the Guidelines. *See* U.S.S.G. § 1B1.5, comment. n.1 (citing § 2D1.10(a)(1), which directs the sentencing court to use "the offense level from the Drug Quantity Table in § 2D1.1"). Because the Sentencing Commission elsewhere has demonstrated that it knows how to reference the Drug Quantity Table when it intends to do so, the absence of "Drug Quantity Table" in § 2D1.2(a), coupled with the imprecise meaning of "offense level from § 2D1.1 applicable to the quantity of controlled substances," renders the cross-reference ambiguous.[2]

Some guidance in construing the cross-reference is provided by the statutory directive pursuant to which the Sentencing Commission enacted § 2D1.2. The background commentary to § 2D1.2 explains that the guideline "implements the direction to the Commission in Section 6454 of the Anti-Drug Abuse Act of 1988." U.S.S.G. § 2D1.2 comment. background. Section 6454, in turn, provides that the Commission "shall promulgate guidelines, or amend existing guidelines to provide that a defendant convicted of violating sections 405, 405A, or 405B of the Controlled Substances Act (21 U.S.C. 845, 845a or 845b) [currently codified at 21 U.S.C.A. §§ 859-61] involving a person under 18 years of age shall be assigned *an offense level . . . that is . . .* two levels greater *than the level that would have been assigned for the underlying controlled substance offense*." *See* Anti-Drug Abuse Act of 1988, P.L. 100-690 (1988), appearing at 28 U.S.C.A.

---

[2]No other circuit has addressed the scope of § 2D1.2's cross-reference to § 2D1.1 in a published opinion. The Ninth Circuit has addressed this issue in an unpublished opinion and concluded that a defendant convicted of a § 860 offense does not qualify for the § 2D1.1(b)(6) safety valve because the cross-reference in § 2D1.2 is to the Drug Quantity Table in § 2D1.1, as opposed to the entire § 2D1.1 offense guideline. *United States v. Talo*, 221 F.3d 1350, 2000 WL 687718 (9th Cir. 2000) (unpublished) ("While U.S.S.G. § 2D1.2(a)(1) does refer to the 'offense level' derived from section 2D1.1 and not the quantity table specifically, the full text of subsection 2D1.2(a)(1) supports limiting the offense level imported from section 2D1.1 to that derived from the quantity table. The phrase 'applicable to the quantity of controlled substances' confines the inquiry to the quantity table, as no other provisions of section 2D1.1 refer to quantities of controlled substances.").

§ 994 note (emphasis added). Only by construing the cross-reference in § 2D1.2 as a cross-reference to the entire § 2D1.1 offense guideline are we able to give effect to the statutory directive to produce an offense level that is, in every case, two levels higher than the offense level that would result if the defendant had engaged in the same conduct but no protected location, pregnant person, or underage person were involved. Thus, based upon this directive, we conclude that § 2D1.2(a)'s cross-reference requires the sentencing court to use the entire § 2D1.1 offense guideline.

We note that this conclusion is in tension with the application note to § 2D1.2(a)(1), which provides the following example of the operation of § 2D1.2(a)(1)'s cross-reference:

> [I]f the defendant, as part of the same course of conduct or common scheme or plan, sold 5 grams of heroin near a protected location and 10 grams of heroin elsewhere, *the offense level from subsection (a)(1) would be level 16 (2 plus the offense level for the sale of 5 grams of heroin, the amount sold near the protected location). . . .*

U.S.S.G. § 2D1.2, cmt. n.1 (emphasis added). In concluding that the offense level is 16, the example notes that U.S.S.G. § 2D1.2(a)(1) requires the sentencing court, after determining the appropriate offense level under § 2D1.1, to add two levels to that offense level. *See* U.S.S.G. § 2D1.2(a)(1) ("2 plus the offense level from § 2D1.1 applicable to the quantity of controlled substances . . . ."). Thus, the example assumes that the offense level after referencing § 2D1.1 is 14. The conclusion that 5 grams of heroin results in an offense level of 14 is one that can be reached only by reference to the Drug Quantity Table. This is so because the example does not permit any increase or decrease in the offense level for other provisions of § 2D1.1, and if § 2D1.2(a)'s cross-reference were to the entire § 2D1.1 offense level, the resultant offense level would be indeterminate. Despite the tension between our construction of § 2D1.2(a)'s cross-reference and this application note, where the Guideline or explanatory commentary conflicts with an express statutory directive, the statutory directive controls. *United States v. LaBonte*, 520 U.S. 751, 757 (1997) (holding that, although Congress has delegated "'significant discretion in formulating guidelines'" to the Commission, the

Commission still "must bow to the specific directives of Congress") (quoting *Mistretta v. United States*, 488 U.S. 361, 377 (1989)); *Stinson*, 508 U.S. at 38 (explaining that the Guidelines commentary "is authoritative unless it violates the Constitution or a federal statute"); *United States v. Alexander*, 100 F.3d 24, 26 (5th Cir. 1996) ("To the extent that they interpret substantive guidelines *and do not conflict with them or with any statutory directives*, policy statements contained in the Sentencing Guidelines are authoritative." (emphasis added)). Thus, insofar as the application note conflicts with the statutory directive, it is non-binding.

### III.

Having concluded that § 2D1.2's cross-reference is to the entire § 2D1.1 offense guideline, we must determine whether Warnick's offense of conviction renders her ineligible for the safety valve provision found in § 2D1.1(b)(6). Section 2D1.1(b)(6) provides, "[i]f the defendant meets the criteria set forth in subdivisions (1)-(5) of § 5C1.2 (Limitation on Applicability of Statutory Minimum Sentences in Certain Cases) and the offense level determined above is level 26 or greater, decrease by 2 levels."[3] U.S.S.G. § 2D1.1(b)(6). Section 5C1.2, in turn, lists five offenses that trigger eligibility for the safety valve. It provides:

> In the case of an offense under 21 U.S.C. § 841, § 844, § 846, § 960, or § 963, the court shall impose a sentence in accordance with the applicable guidelines without regard to any statutory minimum sentence, if the court finds that the defendant meets the criteria in 18 U.S.C. § 3553(f)(1)-(5) set forth verbatim below . . . .

Section 5C1.2 then lists five criteria for determining whether the defendant is eligible for the safety valve.[4] U.S.S.G. § 5C1.2(1)-(5).

---

[3]Warnick's base offense level was 28, and she was granted a three-level reduction for acceptance of responsibility.

[4]The five criteria listed in § 5C1.2(1)-(5) are as follows: the defendant must not have more than one criminal history point; must not have used violence or credible threats of violence or possessed a weapon in connec-

The district court found that Warnick met the criteria listed in § 5C1.2(1)-(5), and the Government has not challenged this finding on appeal. Nevertheless, the Government argues that Warnick is ineligible for the § 2D1.1(b)(6) safety valve because her offense of conviction, § 860, is not among the offenses listed in § 5C1.2. The plain language of § 2D1.1(b)(6), however, merely requires that a defendant meet the criteria found in § 5C1.2(1)-(5); it does not limit the defendant's eligibility for the two-level downward reduction based upon the offense of conviction or otherwise state that the defendant must satisfy any of the other requirements found in § 5C1.2.[5] *United States v. Leonard*, 157 F.3d 343, 345-46 (5th Cir. 1998) ("On its face § 2D1.1[(b)(6)] applies to all defendants convicted of drug crimes whose base offense level is 26 or greater so long as they meet the criteria listed in § 5C1.2(1)-(5)"); *United States v. Osei*, 107 F.3d 101, 103-05 (2nd Cir. 1997) (holding that § 2D1.1(b)(6) operates independently from § 5C1.2 and is subject only to the limitations contained in § 5C1.2(1)-(5)); *United States v. Mertilus*, 111 F.3d 870, 873-74 (11th Cir. 1997) (same). Thus, Warnick's offense of conviction does not render her ineligible for the § 2D1.1(b)(6) safety valve provision.

In support of its argument to the contrary, the Government points to several cases holding that § 860 offenses are ineligible for the safety valve provisions in U.S.S.G. § 5C1.2 and 18 U.S.C.A. § 3553(f). *See, e.g.*, *United States v. Kakatin*, 214 F.3d 1049, 1052 (9th Cir. 2000) (holding that a § 860 offense is not eligible for the

---

tion with the offense; must not have been convicted of an offense resulting in death or serious bodily injury to any person; must not have been an organizer, leader, manager, or supervisor in the offense within the meaning of the guidelines, and must not have engaged in a continuing criminal enterprise; and, not later than sentencing, must have truthfully provided to the Government all information and evidence he has concerning the offense of conviction or related offenses. U.S.S.G. § 5C1.2(1)-(5).

[5]Section 2D1.1(b)(6) was amended in 2001 "by inserting 'subsection (a) of' after '(1)-(5) of' and by striking 'and the offense level determined above is level 26 or greater.'" U.S.S.G. § 2D1.1(b)(6), Supp. to App. C, amend. 624 (2001). Similarly, § 5C1.2 was amended to create two subsections. The § 5C1.2 provision referenced here is delineated as subsection (a) in the amended version.

statutory safety valve found in § 3553(f)); *United States v. Anderson*, 200 F.3d 1344, 1347 (11th Cir. 2000) (concluding that a conviction under § 860 is not eligible for the § 5C1.2 safety valve provision pursuant to the canon of statutory construction that the inclusion of the one implies the exclusion of others: inclusio unius est exclusio alterius); *United States v. McQuilkin*, 78 F.3d 105, 108 (3d Cir. 1996) ("By its terms, 18 U.S.C. § 3553(f) applies only to convictions under 21 U.S.C. §§ 841, 844, 846, 961 and 963. Section 860 is not one of the enumerated sections."). We do not find these cases persuasive authority as to whether § 860 offenses are eligible for the safety valve provision in § 2D1.1(b)(6) because § 5C1.2 and its statutory counterpart each address the elimination of the statutory minimum sentence, whereas § 2D1.1(b)(6) addresses a two-level downward reduction in the offense level. Thus, jurisprudence addressing whether § 860 offenses qualify for the § 5C1.2 and § 3553(f) safety valve provisions is inapposite.

## IV.

For the foregoing reasons, we conclude that the district court improperly found that Warnick is ineligible for a two-level reduction in her offense level pursuant to U.S.S.G. § 2D1.1(b)(6). Therefore, we vacate and remand for the district court to reconsider Warnick's sentence after determining the appropriate offense level.

*VACATED AND REMANDED*